UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| MALINDA WALL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| METROPOLITAN LIFE | ) |
| INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

COMES NOW Plaintiff, Malinda Wall, and for her claims and causes of action against Defendant, Metropolitan Life and Accident Insurance Company, states as follows:

### PARTIES

1. Malinda Wall ("Wall") is a resident and citizen of the State of Missouri.

2. Metropolitan Life Insurance Company ("MetLife") is an out of state insurance company authorized to do business in the State of Missouri. The Commissioner of the Missouri Department of Insurance is authorized to accept service of process on behalf of MetLife in this action.

### JURISDICTION AND VENUE

3. Wall brings her claims pursuant to the Employee Retirement Income Security Act ("ERISA") and 29 U.S.C. § 1001 *et seq*.

4. This dispute is governed by a welfare benefits plan and its policy documents, as well as applicable federal law regarding employer provided benefits. 29 U.S.C. § 1132(e)(1).

5. This Court also has subject matter jurisdiction pursuant to the general jurisdictional statute for civil actions arising under federal law. 28 U.S.C. § 1331.

6. Venue lies in this district under 29 U.S.C. § 1132(e)(2), as the breach occurred in this district, and because the welfare benefits plan is administered in this district.

7. Venue is also proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and/or omissions giving rise to this action occurred within this judicial district.

## INFORMATION REGARDING TRIAL

8. No jury trial is allowed under ERISA law.

## STATEMENTS OF FACT

9. Beginning February 2008, Wall was employed as a Warehouse Packer for the U-Haul Holding Company ("U-Haul").

10. During her employment, Wall began to have serious complications that precluded her from engaging in the material and substantial duties of her occupation, including ankylosing spondylitis, hypothyroidism, Grave's disease, osteoporosis, osteopenia, anxiety, depression, and panic attacks.

11. Wall's chronic conditions impaired her ability to perform her own occupation and the last day she was able to work was November 15, 2017.

12. On the following day, November 16, 2017, Wall called-in sick and her employment was terminated the following Monday on Novembor 20, 2027.

13. U-Haul sponsored group short-term disability ("STD") and long-term disability ("LTD") benefits plans ("Plans") for its participating employees.

14. The Plans is an employee welfare benefits plan as defined by 29 U.S.C. § 1002(1).

15. The Plans offered disability benefits to qualifying U-Haul employees, including Wall.

16. At all relevant times, Wall has been a participant and a covered person under the terms of the Plans.

17. U-Haul is the administrator of the Plans.

18. U-Haul delegated or attempted to delegate the function of issuing the LTD claim determinations to MetLife.

19. U-Haul and MetLife entered into an administrative services contract through which U-Haul paid MetLife for acting as claim administrator.

20. The Plans provide that employees would be entitled to receive STD benefits if they became "disabled" which the STD Policy defines as follows:

> **Disabled** or **Disability** means that, due to Sickness or as a direct result of accidental injury:
> - You are receiving Appropriate Care and Treatment and complying with the requirements of such treatment; and
> - You are unable to earn:
>   - more than 80% of Your Predisability Earnings at Your Own Occupation.

21. The LTD Policy defines "disabled" as follows:

> **Disabled** or **Disability** means that, due to Sickness or as a direct result of accidental injury:
> - You are receiving Appropriate Care and Treatment and complying with the requirements of such treatment; and
> - You are unable to earn:
>   - during the Elimination Period and the next 24 months of Sickness or accidental injury, more than 80% of Your Predisability Earnings at Your Own Occupation from any employer in Your Local Economy; and
>   - after such period, more than 60% of your Predisability Earnings from any employer in Your Local Economy at any gainful occupation for which You are reasonably qualified taking into account Your training, education and experience.

22. Wall enrolled in the Plans and was eligible for benefits.

23. On January 18 2023, Wall initiated STD and LTD claims with MetLife and provided to MetLife clinical evidence of her disabled status.

24. On February 10, 2023, MetLife acknowledged Wall's LTD claim. It did not acknowledge her STD claim.

25. On March 17, 2023, MetLife denied Wall's LTD claim claiming her claimed date of

disability of November 17, 2017, as MetLife claimed Wall was terminated on November 15, 2017, and therefore not eligible for LTD coverage on November 15, 2017. That denial made no mention of a determination of Wall's STD claim.

26. MetLife's denial stated that Wall could appeal the adverse determination with respect to her LTD benefits within 180 days.

27. On March 23, 2023, Wall requested a copy of her claim file from MetLife.

28. The claim file reveals that MetLife did not receive a customary "Employer's Statement," which allows employers to provide to insurers key information regarding a claim, including the last day that a claimant physically worked and the last day of a claimant's employment.

29. Wall has a specific recollection of working on November 15, 2017, calling in sick the next day on November 16, 2027, and receiving her termination notice on November 20, 2015.

30. On August 3, 2023, Wall appealed MetLife's denial of LTD benefits.

31. Wall, in her appeal, supplied sufficient evidence for MetLife to determine both that Wall meets the policy definition of disability and that she was covered under the policy at the time she became disabled.

32. On December 19, 2023, MetLife upheld its denial of benefits stating that it had no medical information regarding Wall's disability and granting Wall new appeal rights.

33. On June 11, 2024, Wall again appealed her denial of LTD benefits.

34. On July 5, 2024, MetLife again denied Wall's claim on the grounds that Wall's LTD coverage ended on November 15, 2017 and that it had no evidence that she was disabled as of November 15, 2017.

35. Wall's conditions are chronic and progressive in nature.

36. The severity of Wall's conditions

37. MetLife never acknowledged nor made a determination on Wall's STD claim.

38. At all relevant times, Wall was and remains "Disabled" under the Plan.

39. Wall has exhausted all administrative remedies with respect to her LTD claim.

40. MetLife's failure to act in any way in regards to Wall's STD claim operates as if Wall has exhausted her administrative remedies with respect to her STD claim pursuant to 29 C.F.R § 2560.503-1(l)(2).

CAUSES OF ACTION

COUNT I<br>
29 U.S.C. § 1132(a)(1)(B) – WRONGFUL DENIAL OF BENEFITS

41. Wall realleges the preceding paragraphs as if fully set forth herein.

42. Wall is entitled to all unpaid and accrued STD benefits, as MetLife;

    a. Failed to consider Wall's medical impairments and resulting limitations, or to otherwise act in any way with regards to claim for STD benefits.

43. Wall is entitled to all unpaid and accrued LTD benefits, as MetLife;

    a. Failed to properly consider Wall's medical impairments and resulting limitations; and

    b. Issued an unfavorable decision that was arbitrary and capricious.

44. Pursuant to 29 U.S.C. § 1132(a)(1)(b), Wall is entitled to an award of actual damages for losses suffered.

45. Pursuant to 29 U.S.C. § 1132(g), judgment may include compensation for a beneficiary's attorney's fees, costs, and prejudgment interest.

46. MetLife has not satisfied its obligation to pay Wall STD or LTD benefits.

47. WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(g), Wall prays for judgment against MetLife for unpaid STD and LTD benefits, attorney's fees, costs, and

prejudgment interest.

## COUNT II
## 29 U.S.C. § 1132(a)(3) – BREACH OF FIDUCIARY DUTY

48. Wall realleges the preceding paragraphs as if fully set forth herein.

49. Under 29 U.S.C. § 1002(21)(A), a fiduciary is one who:

> "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."

50. 29 U.S.C. § 1104(a)(1)(A) describes the fiduciary standard of care:

> "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."

51. As the Plan's designated claims administrator and entity exercising discretion in claims administration, MetLife is a fiduciary.

52. Wall participated in MetLife STD and LTD benefits plans as previously indicated.

53. As the payor of benefits and the entity responsible for benefits determinations, MetLife operates under an inherent structural conflict of interest.

54. A higher than marketplace quality standard, as set forth in *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 (2008) governs MetLife's actions as a fiduciary.

55. MetLife breached its fiduciary duty in:

   a. Engaging in a direct structural conflict of interest by assuming the role of both claim administrator and potential payor of benefits; and

  b. Failing to comply with its internal guidelines and claims processing procedures. Its claims handlers did not comply with documented instructions involving the administration of disability claims, including its procedures involving coverage and eligibility determinations.

56. MetLife denied Wall's LTD benefits for the purpose of elevating its financial interests. In doing so, it breached its fiduciary duties.

57. MetLife failed to discharge its duties solely in the interests of its participants and beneficiaries. It acted with a conflict of interest and breached its fiduciary duty to both Wall and the Plan's participants and beneficiaries generally.

58. MetLife's improper conduct demonstrates that ordinary relief under § 1132(a)(1)(B) is not an adequate remedy.

59. MetLife's violations of regulations alone allow Wall the right to pursue any remedy under Section 502(a) of ERISA, including § 1132(a)(3). 29 C.F.R. § 2560.503-1(l)(2)(i).

60. MetLife's violations of federal regulation also subject its decision to *de novo* review.

61. WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(3), § 1109, and § 1132(a)(2), Wall prays for an order that MetLife retrain its employees consistent with ERISA fiduciary obligations and federal regulations; for reformation of its services agreement with the plan administrator consistent with ERISA fiduciary obligations and federal regulations; for an injunction preventing further unlawful acts by MetLife in its fiduciary capacity; for an equitable accounting of benefits that MetLife has withheld; for the disgorgement of profits enjoyed by MetLife in withholding benefits; for restitution under a theory of surcharge; for the Court's imposition of a constructive trust; for an award of attorney fees; and for further relief as the Court deems just.

Respectfully submitted,

BURNETTDRISKILL, Attorneys

By: /s/ Derrick A. Pearce
    Derrick A. Pearce, Mo. # 42793
    Benjamin Narrell, Mo. # 76715
    103 W 26th Ave., Ste. 290
    North Kansas City, MO 64116
    P: 816.781.4836
    F: 816.792.3634
    dpearce@burnettdriskill.com
    bnarrell@burnettdriskill.com
    ATTORNEYS FOR PLAINTIFF